**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MILLBURN TOWNSHIP BOARD OF EDUCATION,<br><br>                    Plaintiff,<br><br>v.<br><br>M.P. et al.,<br><br>                    Defendants. | Civil Action No.: 15-5284 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Plaintiff Millburn Township Board of Education (the "District")'s motion for a stay pending appeal of the April 14, 2015 decision of the Honorable Richard McGill, A.L.J., in the underlying matter captioned as *M.P. and J.P. o/b/o S.P. v. Millburn Township Board of Education*, OAL Docket No. EDS 05984-13, Agency Ref. No. 2013-19303 (the "OAL decision"). (ECF No. 15.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the District's motion.

**FACTUAL BACKGROUND**[1]

Defendants, M.P. and J.P., are the parents of S.P. S.P. is a student in the District. S.P. was

---

[1] This background is derived mainly from the Administrative Record, which is essentially limited to the OAL decision and related documents, but does not include the underlying exhibits considered by the ALJ. (ECF No. 7 ("Admin. R.")) The background is provided in summary fashion for two reasons: first, the parties are intimately familiar with the details; and second, even though the District disagrees with the ultimate OAL decision and rationale, the parties do not dispute the underlying history of events, and so the Court hereby incorporates the statement of facts presented in the OAL decision for purposes of this motion. (*See* Admin. R.)

initially classified in grade 3 as Eligible for Special Education and Related Services as meeting the criteria of Other Health Impaired, and remained so through seventh grade. A 2010 reevaluation, conducted while S.P. was a seventh grade student at Millburn Middle School, noted that S.P. had been diagnosed with auditory processing concerns, components of Attention Deficit Hyperactivity Disorder (ADHD), a mood disorder, traits of Obsessive-Compulsive Disorder (OCD), and was experiencing concurrent social and hormonal changes. As a result of the re-evaluation, on July 28, 2010, S.P.'s classification changed to Emotionally Disturbed because the primary issue impacting S.P. was a mood disorder with anxiety and noncompliance at home. S.P. became increasingly school avoidant.

By December 2010, Defendants requested that out-of-district placements be explored. The Child Study Team recommended that S.P. be placed at Cornerstone, a therapeutic day school licensed as an Outpatient Mental Health Facility, and he was transitioned to Cornerstone effective March 2011. It was decided that S.P. would continue in 8th grade during the summer months of 2011, and begin 9th grade in September 2011.

Defendants contend that between September 2011 and May 2012, S.P. began spiraling out of control, and on May 9, 2012, Defendants requested a review of the educational components of the Cornerstone program. The parties began exploring placement at the Community School, but S.P. returned to Cornerstone for the 2012-13 school year. Three days into the school year (during the last weeks of August 2012), a violent incident occurred which caused J.P. to call the police and have S.P. admitted to a psychiatric hospital. S.P. did not return to Cornerstone after his hospitalization; instead, he began attending Stepping Forward Counseling Center in September 2012, a transitional program which provided counseling as well as educational services.

In or about September 2012, Holly Blumenstyk conducted an independent evaluation of S.P. and diagnosed S.P. with a math disorder, reading disorder, ADHD, and recommended a specialized school with a strong learning disabilities component that follows a regular high school curriculum and offers extracurricular activities and positive behavioral supports.

On December 6, 2012, Defendants attended an individualized education program ("IEP") meeting where the Child Study Team agreed to an out-of-district placement, and S.P.'s classification was changed from Emotionally Disturbed to Specific Learning Disability. On December 17, 2012, unbeknownst to the District, Defendants submitted an application the Eagle Hill School in Massachusetts ("Eagle Hill"). On January 4, 2013, the District held a follow-up IEP meeting, during which the Community School was identified as a school for S.P. Placement at the Community School was discussed further on January 10, 2013. The parents rejected the offer of the Community School because they did not feel it was an appropriate placement for S.P. Instead, the parents unilaterally placed S.P. at Eagle Hill effective March 2013, where he was enrolled for the remainder of the 2013-2014 school year and the 2014-15 school year.

## PROCEDURAL HISTORY

On February 7, 2013, Defendants initially filed a petition for due process challenging the District's proposed IEP dated January 4, 2013, recommending placement for S.P. at the Community School in Teaneck, NJ. Effective March 2013, Defendants unilaterally placed S.P. at Eagle Hill, and amended their petition on or about April 18, 2013, to reflect a demand for reimbursement of costs incurred in connection with placement of S.P. at Eagle Hill. Defendants further sought a declaration that S.P.'s past placements for grades 7 and 8 were inappropriate.

On April 14, 2015, Administrative Law Judge Richard McGill (the "ALJ") issued a decision in favor of Defendants in a due process proceeding brought under the Individuals with Disabilities Education Act ("IDEA") against the District. (*See* ECF No. 1, Compl. Ex. A.) The ALJ ordered the District to reimburse Defendants for costs incurred in connection with the March 2013 unilateral placement of S.P. at Eagle Hill, and awarded eight months of compensatory education to Defendants. (*Id.*)

On or about July 7, 2015, the District filed a Complaint under 20 U.S.C. § 1415(i)(2)(A), seeking an Order reversing Judge McGill's decision and a finding that the District at all times met its obligations to S.P. (ECF No. 1, Compl.) On August 28, 2015, Defendants filed an Answer and asserted a Counterclaim seeking attorneys' fees (ECF No. 3), which the District Answered on September 17, 2015. (ECF No. 4.)

On December 11, 2015, the District filed a letter requesting leave to file a motion for a stay of the OAL decision. (ECF No. 6.) As part of the request, the District enclosed a letter dated November 25, 2015 from the New Jersey Department of Education in which the Department of Education directed the District to either provide a court-ordered stay or present proof of reimbursement of $229,537.47 and the District's plan for compensatory education, on or before January 8, 2016. (*See* ECF No. 6 encl.) Defendants filed a letter opposing the request, arguing that the District had ample time to request a stay but failed to do so, and that the Department of Education had sent letters to the District demanding the court-ordered stay or reimbursement as early as October 14, 2015. (ECF No. 8.) In response, the District asserted that they have consistently maintained that reimbursement is inappropriate absent a decision on the merits of the appeal, and that the Department of Education's letter forced them to move for a court-ordered stay.

4

(ECF No. 9.)

On December 18, 2015, the case was reassigned to the undersigned. (ECF No. 11.) On December 21, 2015, the Court entered a scheduling Order. (ECF No. 14.) On December 21, 2015, the District filed the instant motion for a stay of the OAL decision pending a determination on the merits of the appeal. (ECF No. 15 ("Mov. Br.").) On January 4, 2016, Defendants filed opposition to the motion for a stay. (ECF No. 18 ("Opp. Br.").) A hearing was set for January 6, 2016 at 1:30 PM (ECF No. 14), but was converted into a telephone conference. (ECF No. 20.) On January 6, 2016, the District filed a letter in which it advised that the Department of Education agreed to extend the January 8, 2016 deadline to January 28, 2016. (ECF No. 19.) The matter is now ripe for adjudication.

## **LEGAL STANDARDS**

### A. Motion for Stay

A stay is "an exercise of judicial discretion" and "the propriety of its issues is dependent on the circumstances of the particular case." *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926). The four factors to consider are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987); *Nken v. Holder*, 556 U.S. 418, 426 (2009). As the party requesting the stay, the District bears the burden. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B. Individuals With Disabilities Education Act (IDEA)**

The IDEA is a "comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities" and it provides federal funds to assist states "in providing educational services to children with disabilities," subject to the condition "that states meet a number of substantive and procedural criteria." *M.A. ex rel. E.S. v. State–Operated Sch. Dist.*, 344 F.3d 335, 338 & n.4 (3d Cir.2003). Two important concepts within the IDEA are "free, appropriate public education" (FAPE) and "individualized education program" (IEP). The IDEA provides for reimbursement and compensatory education, also sets a process for relief.

    1. <u>Free, Appropriate Public Education (FAPE)</u>

The IDEA requires those states that "provide special education funds [and that] are eligible for federal funds to implement state-wide special education programs that guarantee a FAPE to eligible disabled children." *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 232 (3d Cir. 2013) (citing 20 U.S.C. § 1412(a)(1)(A)). According to the Supreme Court, a FAPE consists of "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188–89 (1982) (summarizing 20 U.S.C. § 1401(9)). There is a preference for "mainstreaming," meaning that a child should be placed in the least restrictive environment that will provide him with a meaningful educational benefit. *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006).

    2. <u>Individualized Education Program (IEP)</u>

The "centerpiece" of the IDEA is the "individualized education program" (IEP). *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010). There are numerous procedural and

substantive criteria that must be met for an IEP to be deemed satisfactory. *See* 20 U.S.C. § 1414(d). "The IDEA does not set forth definitive guidelines for the formulation of an IEP, but at a minimum, [t]he IEP must be 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's 'intellectual potential.'" *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010) (citations and some internal quotation marks omitted). "The right to a FAPE ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Id.* (quoting 20 U.S.C. § 1400(d) (1)(A)). However, school districts are not required to "maximize the potential" of each student. *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir.2013) (citations omitted). School districts work with parents to design the IEP, which "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (internal quotation marks omitted); *see also* 34 C.F.R. § 300 *et seq.* (relevant federal regulations); N.J.A.C. § 6A:14 *et seq.* (New Jersey's condification of the IDEA requirements, which follow the federal requirements).

### 3. Reimbursement and Compensatory Education

The IDEA allows for reimbursement. *See Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985) ("[W]e are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case."); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii). To be eligible for reimbursement, a district must have failed to provide a FAPE, and the placement must be proper. *Id.* A private placement is "proper" if it (1) is "appropriate," i.e., it provides "significant learning"

and confers "meaningful benefit," and (2) is provided in the least restrictive educational environment. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007) (citation omitted). Reimbursement for placement at a residential program is permitted, as long as it is "appropriate." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 430 (3d Cir. 2013). However, if "residential placement is a response to medical, social or emotional problems that are segregable from the learning process," the District is not obligated to bear the cost; but where "the social, emotional, medical and educational problems . . . [are] so intertwined that realistically it is not possible for the court to perform the Solomon-like task of separating them," the District will bear the cost. *Kruelle v. New Castle Cty. Sch. Dist.*, 642 F.2d 687, 693-94 (3d Cir. 1981).

Relatedly, IDEA allows for compensatory education. "[A] school district that knows or should know that a child has an inappropriate [IEP] or is not receiving more than a de minimis educational benefit must correct the situation. . . . [I]f it fails to do so, a disabled child is entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996).

    4. Process for Relief Under the IDEA

"When a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: [i]t requires that a State provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child.'" *Winkelman ex rel Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). In practice, this takes the form of an administrative proceeding

8

centered around an "impartial due process" hearing, 20 U.S.C. § 1415(f)(1), after which "the IDEA permits an aggrieved party to bring a civil action in any court." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (citing 20 U.S.C. § 1415(i)(2)(A)).

## ANALYSIS

The Court finds that the District has not met their burden of showing that a stay is warranted under the circumstances presented. When balancing all of the factors, the Court is not convinced that a stay is justified. The Court addresses each factor in turn.

A. Likelihood of Success on the Merits

With respect to likelihood of success on the merits, there are special circumstances to consider, since "judicial review in IDEA cases differs substantially from judicial review of other agency actions in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995). When a federal district court reviews an administrative adjudication in an IDEA case, the court: (i) shall receive the records of the below proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on a preponderance of evidence, shall grant such relief as the court deems appropriate. 20 U.S.C. § 1415(i)(2)(C); *see Oberti v. Board of Education*, 995 F.2d 1204, 1219 (3d Cir. 1993) (quotation omitted). A district court gives "due weight" or a "modified *de novo*" review to an ALJ's factual findings, *see S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003), and applies a *de novo* standard of review for questions of law. *See P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003) (citation omitted).

The District argues that it is likely to succeed—*i.e.*, that it is likely to have the OAL decision

reversed or modified—for four reasons. First, the District contends that the IEP proposed in December 2012 and January 2013, which offered placement of S.P. at the Community School, were designed to confer a FAPE in the least restrictive environment. (Mov. Br. at 17-18.) Second, the District argues that it should not be financially responsible for the placement at Eagle Hill because that decision was made unilaterally by S.P.'s parents in order to meet S.P.'s mental health needs, rather than his educational needs. (*Id.* at 18-19.) Third, the District argues that an award for reimbursement must be reduced or denied in light of the alleged unreasonableness of Defendants' actions, in particular their unilateral decision to enroll S.P. at Eagle Hill while not taking the Community School option seriously. (*Id.* at 19-22.) Fourth, the District contends that there is no basis for an award of eight months of compensatory education. (*Id.* at 22-26.) Additionally, the District argues that the ALJ's credibility determinations are not entitled to weight and that the evidence relating to Eagle Hill must be balanced with the admission of the rebuttal testimony of Julianna Kusz, relating to her visit to and observations of S.P. at Eagle Hill in late January 2014. (*Id.* at 26-30.)

In opposition, Defendants present several arguments. (Opp. Br. at 12-29.) Defendants first contend that in order to overturn the OAL decision, the Court must point to "non-testimonial evidence that undermined the testimony of these witnesses" and "provide an explanation for its decision to reject the ALJ's decision to credit" one witness over another. (*Id.* at 12-13 (citing *L.G. v. Fair Lawn Bd. of Educ.*, 2011 WL 2559547 (D.N.J. June 27, 2011).) Additionally, Defendants note that the New Jersey Special Education Code plainly states that the decision of the ALJ is final and should be implemented without undue delay. *See* N.J.A.C. 6A:14-2.7(l). Defendants contend that the District should have moved for a stay when it filed its appeal and that their delay in seeking

one is inexcusable, since the delay is "causing further damage." (*Id.* at 13.)

In addressing the District's arguments, Defendants first assert that the IEP proposed in January 2013 (*i.e.*, placement at the Community School) was inappropriate and not individualized to meet S.P.'s educational and emotional needs, and that the ALJ correctly weighed the evidence (including testimony that S.P. required a residential component) in reaching this decision. (*Id.* at 14-19.) Defendants argue that the District does not provide any evidence, testimonial or non-testimonial, to refute that finding. Additionally, evidence that S.P. was not emotionally stable during the hearing directly undermines the District's arguments, because the change in S.P.'s classification (from emotionally disturbed to specific learning disability) did not change S.P.'s need for social, emotional, and therapeutic support, and also because the Community School did not accept students with significant behavioral or mental illness. (*Id.*) Second, Defendants argue that the placement at Eagle Hill was appropriate and the parents' actions were reasonable under the circumstances. (*Id.* at 20-25.) The ALJ concluded that the parents are entitled to reimbursement for the cost of Eagle Hill because the program proposed by the district was inappropriate and that the parental placement was appropriate and made in good faith. Relatedly, Defendants argue that the District had the burden of proof and production during the due process hearing, but failed to address the appropriateness of Eagle Hill in their case-in-chief, and "preposterous[ly]" tried to raise the issue for the first time in rebuttal. (*Id.* at 13, 21-23.) Defendants claim that the parents applied to Eagle Hill on December 17, 2012, only because the IEP presented to the parents on December 6, 2012 did not identify a placement for S.P., and the parents were fearful that S.P. would not have a place to go to school. (*Id.* at 25.) Third, Defendants argue that the ALJ correctly found that the placement and program at Cornerstone was

11

inappropriate as of Spring 2012 and that S.P. was eligible for compensatory education. (*Id.* at 25-29.) Defendants contend that the District has failed to present any documentary evidence showing that Cornerstone was appropriate placement for S.P. such that compensatory education is unwarranted. (*Id.*)

The Court agrees with Defendants because the limited record available to the Court at this stage (which, as noted, is limited essentially to the OAL decision) provides sufficient support for the ALJ's conclusions. The ALJ conducted hearings over the course of six days and heard testimony from ten witnesses, and he also reviewed extensive documentary evidence in reaching his conclusions. The ALJ made specific credibility findings based on the evidence presented in reaching his conclusions on the fact-intensive issues in this case.

First, the ALJ determined that the District failed in providing a FAPE to S.P. in that the IEP formulated in late 2012 / early 2013 did not completely and accurately describe S.P.'s disability. (OAL decision at 39-43.) With respect to the December 2012 IEP, the ALJ specifically found that it "understates S.P.'s disability in two respects."

> First, as [the District] acknowledges, S.P. still suffers from ADHD. Second, there is no evidence that S.P. is no longer emotionally disturbed. It is noteworthy that none of [the District's] witnesses testified that S.P. is not emotionally disturbed. In fact, they seemed to be very careful to state only that "it was agreed" to change S.P.'s classification [from emotionally disturbed] to specific learning disability.

(OAL decision at 42.) The District has not convinced the Court that this conclusion is erroneous at this stage. Additionally, the ALJ referenced the testimony of two witnesses in reaching this conclusion: Dr. Charles Cartwright (a psychiatrist of S.P.'s since Fall 2012) and Toby Braunstein (Director of Education at the Community School). The ALJ found Dr. Cartwright's testimony to

12

be entirely credible and gave credit to his testimony that that a residential placement would be necessary for S.P. In contrast, the ALJ found Ms. Braunstein's testimony on the issue of whether the Community School could implement S.P.'s IEP as unreliable because, in the ALJ's opinion, "she did not demonstrate that she had full knowledge of S.P.'s emotional issues." (OAL decision at 43.) The District has not pointed to any compelling evidence to undermine these credibility determinations.

Second, the ALJ concluded that placement of S.P. at Eagle Hill was appropriate. The ALJ set forth the relevant legal standards, which the parties do not dispute, before discussing the testimony of the various witnesses on the subject. (*See* OAL decision at 43-46.) On this point, the ALJ found the testimony of Linda Auld (who determined that S.P. had made measurable progress at Eagle Hill), James C. Woodley (in-home crisis counselor to Defendants who testified that S.P. showed signs of progress after attending Eagle Hill), and Dr. Cartwright (who testified that S.P. showed a "dramatic improvement" after attending Eagle Hill) to be credible and adopted their testimony as fact. Again, the District has not pointed to any compelling evidence to undermine these credibility determinations. Furthermore, the Court agrees with Defendants that S.P.'s current placement (in particular the fact that he is no longer enrolled at Eagle Hill) is beyond the scope of the issues currently before the Court. As to the District's point that the amount of reimbursement should be reduced, the testimony of the witnesses relied on by the ALJ undermines this argument, since the testimony states that the Community School was not a good fit for S.P. Thus, the Court cannot conclude at this stage that Defendants were unreasonable in placing S.P. at Eagle Hill, such that the amount of reimbursement should be reduced.

Finally, with respect to the ALJ's determination that S.P. should receive eight months of

compensatory education, the ALJ relied on the evaluation performed by Ms. Blumenstyk, which showed that S.P. was far below his aptitude level in both reading comprehension and math calculation skills after attending Cornerstone from approximately March 2011 to August 2012, and testimony from Dr. Cartwright that the root cause of S.P.'s issues was a learning disorder, which was not being satisfactorily addressed at Cornerstone. (OAL decision at 46-47.) Relying on this testimony, the ALJ concluded that the District should have known that S.P. was not receiving a FAPE at Cornerstone as early as Spring 2012, and determined that a new program should have been place by July 1, 2012. Again, the District has not pointed to any compelling evidence to undermine the ALJ's reliance on this testimony.

In sum, the District has not pointed to any compelling evidence that the ALJ overlooked, nor have they sufficiently explained how the ALJ erred in reaching his conclusions. Because there is no new evidence before the Court, additional deference is owed to the ALJ's conclusions. *See Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014) ("[T]he district court should afford more deference when its review is based entirely on the same evidence as that before the [administrative officer].") (citation and internal quotation marks omitted). Accordingly, the Court finds that this factor weighs against granting the stay.

B. <u>Irreparable Harm to Moving Party if Stay is Not Issued</u>

The District argues that financial harm is irreparable in the case of a public school district paying for special education costs under IDEA because the District may not seek reimbursement from the parents if the District ultimately prevails in the dispute. (Mov. Br. at 30-32.) In support, the District cites to a handful of recent district court decisions from other circuits, and argues that a public school district paying for special education as ordered by a lower court will suffer

irreparable harm, especially where the amount in question is "not trivial." (*Id.*) The District argues that the amount in contention here ($229,537.47) should not be paid until a decision on the merits of the appeal has been rendered.

In opposition, Defendants contend that the cases relied on by the District are distinguishable. (Opp. Br. at 29-31.) First, they claim that *Meza v. Bd. of Educ. of the Portales Mun. Schs*, 2011 WL 1128876 (D.N.M. Feb. 25, 2011) is distinguishable because in that case the hearing officer's Order was not legally valid under IDEA. Second, they contend that *D.C. v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) is inapposite because there the hearing officer did not address how the compensatory education funds would address the deficits caused by the school system's past failures. Finally, Defendants distinguish *Wilmington Board of Education v. GW & CW o/b/o MW*, 2015 WL 4164876 (D. Conn. June 15, 2015), on grounds that the court there ultimately denied the motion for a stay pending appeal.

This factor weighs in favor of the District because there is no specific mechanism under the IDEA through which the District could seek a return of the money if this Court ultimately rules in its favor. As such, the District's appeal of the OAL decision would practically become moot if they are required to pay the ordered reimbursement to Defendants. *See D.C. v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) ("District will likely suffer irreparable harm in the form of both economic injury and the potential loss of its ability to effectively appeal the [administrative decision] if the stay is not granted.").

However, the Court notes that the District delayed nearly seven months in seeking a stay of the OAL decision. It was only after the New Jersey Department of Education demanded that the District reimburse Defendants that the District moved for a stay. (*See* ECF No. 6, Letter.) This

demand by the state agency is significant, since it is ultimately the State that is legally responsible under the IDEA. *See Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511–12 (7th Cir. 2005) ("IDEA is a program of financial assistance to states conditioned on the *states*' complying with certain requirements of the Act . . . . From the Act's standpoint the state is an indivisible unit.") (emphasis in original). The Court further notes that the New Jersey Department of Education has stated that the District need only provide a plan for the ordered compensatory education. In other words, the state agency has weighed in and stated that the District must reimburse Defendants for the money they have already spent, but that the District need not provide money at this time for prospective compensatory education. The fact that the State has specifically demanded that the District reimburse Defendants undermines the claim of irreparable harm, but the Court nevertheless finds that this factor weighs in favor of the District.

C. Harm to Non-Moving Part if Stay is Issued

The District argues that granting a stay will not injure Defendants, because S.P. continues to receive appropriate educational services. (Mov. Br. at 32-33.) The District emphasizes that Defendants unilaterally withdrew S.P. from Eagle Hill, and that he is currently attending Craig School, and so there is no risk of disruption to S.P.'s educational program. (*Id.*)

In opposition, Defendants contend that S.P. is currently receiving appropriate educational services because the parents are solely funding his therapies and tuition, and have been providing S.P. with an appropriate education first at Eagle Hill and now at Craig High School. (Opp. Br. at 31-32.) Defendants claim that the parents have been placed under significant financial stress as a result of having to do the District's job for the past three school years. (*Id.*) Defendants claim that the District failed to provide S.P. with a FAPE, and they are now unfairly delaying the

16

compensation owed to Defendants. (*Id.*) Defendants claim that a stay could potentially disrupt S.P.'s current educational services because the family continues to be burdened with S.P.'s tuition and therapies. (*Id.*)

The Court finds that this factor weighs in favor of Defendants. The amount of reimbursement ordered in the OAL decision is hardly insignificant. The Court has no reason to doubt Defendants' position that they are burdened with the costs of providing tuition and therapies to S.P., and that the reimbursement for Eagle Hill is necessary to ensure that S.P. continues receiving a FAPE. Accordingly, the Court finds that this factor weighs against granting the stay.

D. Public Interest

The District puts forth two main public interest factors in favor of granting the stay. (Mov. Br. at 33-34.) First, the District contends that the unilateral placement of S.P. in a residential, out-of-state program was unnecessary (as evidenced by his withdrawal) and flies in the face of IDEA, the goal of which is educate students with disabilities in an appropriate program in the least restrictive environment. (*Id.*) Second, the District argues that public interest lies is not forcing the District to pay $229,537.47 for private educations costs that "are likely to be deemed unnecessary" since there is a general interest in ensuring that public monies are spent in accordance with the law and at reasonable levels. (*Id.*)

In opposition, Defendants contend the public interest favors adhering to decisions rendered under IDEA and the administrative courts. (Opp. Br. at 32-33.) Defendants assert that granting the stay would undermine the process set forth in IDEA. (*Id.*) They further argue that S.P.'s ultimate withdrawal from Eagle Hill is not relevant to the issue before the Court.

The Court finds that this factor is neutral and neither weighs in favor of granting the stay or

against it. On the one hand, the Court agrees with the District that there is a public interest in ensuring that public monies are spent appropriately. On the other hand, the Court agrees that the public interest lies in favor of the District complying not only with the order of the OAL, but also with the demand from the New Jersey Department of Education. Accordingly, the Court finds that this factor is neutral.

## CONCLUSION

When weighing all of the relevant factors, the Court finds that the District has not met its burden of demonstrating an entitlement to a stay under the facts presently before the Court. Accordingly, the Court denies the District's motion. An appropriate Order accompanies this Opinion.

DATED: January 26, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE